UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROY A. MELANSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MARY JOHNSON,<br><br>    Defendants. | Case No: C 11-0446 SBA (pr)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. 25 |

Plaintiff Roy A. Melanson, a California state prisoner currently incarcerated at Pleasant Valley State Prison, brings the instant pro se action under 42 U.S.C. § 1983 against Mary Johnson, alleging that she was deliberately indifferent to serious medical needs. This claim stems from an incident on December 12, 2010, when Defendant Johnson, a nurse, dispensed the wrong medication to Plaintiff at the Napa County Jail, where he was then housed.

The parties are presently before the Court on Defendant R.N. Mary Johnson's Motion for Summary Judgment. Dkt. 25. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. Since October 2008, Defendant Johnson, an employee of the California Medical Forensic Group, Inc., has been a registered nurse licensed by the State of California. Johnson Decl. ¶ 1, Dkt. 26. In December 2010, Defendant was working at the Napa County Jail, where one of her duties was to distribute medications to inmates. Id. ¶ 5, Dkt. 26. The procedure for delivering prescription medication to inmates is as follows: (1) The prescription medications are placed into envelopes designated with the patient/inmate's name; (2) the nurse distributing the medications to inmates removes a specific envelope from a cart containing all the envelopes and, after asking an inmate for his name, places the pills in the inmate's hands through the food slot on the cell door; (3) the inmate is asked to check the medications he received to ensure that they are the same medications those that he has been taking; and (4) the inmate is given a paper cup with water to use to take the medications. Id. ¶ 4; Boss Decl. ¶¶ 4, 5, Dkt. 27.

On December 12, 2010, at around 5:00 p.m., Defendant was delivering medications to Plaintiff in his cell when she inadvertently gave him the medication packet intended for a different inmate. Johnson Decl. ¶ 5. According to Defendant, Plaintiff stated that he had checked his medications and then swallowed the pills. Id. Defendant claims that although she realized her mistake "immediately" but that Plaintiff had already ingested the medication—10 mg of Zyprexa, 225 mg of Clozapine, and 1000 mg of Divalproax Id. ¶¶ 6, 9; Boss Decl. ¶ 7. Defendant informed Plaintiff and Correctional Officer C. Rosen of her error, and instructed Plaintiff to contact medical or correctional staff in the event that he felt "anything out of the ordinary." Johnson Decl. ¶ 7. Defendant also reported her mistake to Elizabeth Carolan, R.N., the nurse coming on duty at the shift change scheduled for 6:00 p.m., and asked her to monitor Plaintiff's status. Id. ¶¶ 7-8; Boss Decl. ¶ 6. Defendant then filed an incident report with her supervisor, Medical Services Program Manager David Boss, R.N. ("Boss"). Johnson Decl. ¶¶ 3, 8 and Ex. A. at 1.

In addition to the incident report, Boss was notified of the incident by Kate Sornberger, R.N.  Boss Decl. ¶ 6.  Nurse Sornberger had learned of the error from Nurse Carolan, who, along with other jail personnel, had been monitoring Plaintiff through the early morning hours of December 13, 2010, to determine whether there was any change to his condition.  Boss Decl. ¶ 6 and Ex. A at 137, 138.  Nurse Sornberger documented that Plaintiff had responded with the correct date when questioned, but that he could not or would not keep his eyes open.  Id. ¶ 7.  Based on his knowledge of the medication given to Plaintiff, Boss did not believe that they were toxic.  Id.  Nonetheless, he instructed Nurse Sornberger to have Dr. James Luders, the jail's physician, examine Plaintiff during his morning rounds.  Id.  Dr. Luder's records show that he examined Plaintiff at around 6:30 a.m. on December 13.  Id. ¶ 9.  He noted that Plaintiff was unable to keep his eyes open, and as a result, directed that Plaintiff be sent to the emergency room at the Queen of the Valley Hospital for observation.  Id.  Plaintiff was transferred to the hospital at 7:00 a.m. Id. Ex. A at 137.

At around 1:30 p.m., Dr. Luders spoke with the emergency room physician, who reported that there had been a gradual improvement in Plaintiff's alertness.  Id. ¶ 10.  Dr. Luders was also advised that the toxicology screen and a CT scan were negative.  Id.  The emergency room physician then discharged Plaintiff.  Id.  After Plaintiff was returned to the jail, Dr. Luders checked on Plaintiff and found him to be lethargic and minimally verbal. Id. ¶ 11.  Dr. Luders instructed that Plaintiff be examined every two hours.  Id.  At 3:30 p.m., Boss contacted the pharmacist consultant for the jail's medical program regarding the medication mistakenly given to Plaintiff.  Id. ¶ 12.  The consultant advised Boss that the effects of Zyprexa, in particular, were sedation and confusion.  Id.  He advised that the half-life of the medication was 21 to 54 hours, and potentially longer given Plaintiff's age (74 years old), but that medication's effects would eventually dissipate.  Id.  Thereafter, jail staff regularly monitored Plaintiff's condition until he improved.  Id.

On January 31, 2011, Plaintiff filed the instant action in this Court against Defendant Johnson.  Dkt. 1.  Plaintiff alleges that as a result of Defendant's error, he suffered serious

- 3 -

headaches, confusion and memory loss. The Court liberally construed the Complaint as alleging a claim for deliberate indifference to serious medical needs.[1] Dkt. 12. In accordance with the Court's Order of Service, Defendant filed a motion for summary judgment, which has now been fully briefed by the parties and is ripe for adjudication. Dkt. 28, 29.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A

---

[1] As noted in the Court's Order of Service, it is unclear whether Plaintiff was a pretrial detainee or state prisoner at the time of the incident. See Order of Service at 2 n.1. Regardless, the protections of the Eighth Amendment apply to prisoners, and by analogy, to pretrial detainees. Id.

- 4 -

factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III. DISCUSSION

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). To establish a claim for deliberate indifference to serious medical needs, the plaintiff must show (1) "a serious medical need by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations omitted). The second prong of this standard "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.

Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Deliberate indifference is a state of mind "more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Only a prison official who knows both of "facts from which the inference could be drawn" that an excessive risk of harm exists and *who actually draws that inference* is deliberately indifferent to the inmate's health. Farmer, 511 U.S. at 837.

In the instant case, Plaintiff alleges that he is older and suffers from heart disease and diabetes, and therefore, Defendant's actions show deliberate indifference.  The undisputed evidence, however, demonstrates precisely the opposite.  Upon realizing that she had given the wrong medication to Plaintiff, Defendant informed Plaintiff, other jail and medical staff and her supervisor of her error. Johnson Decl. ¶¶ 7-8.  To rectify her mistake, Defendant instructed Plaintiff to notify correctional or medical staff if he felt anything out of the ordinary.  Id. ¶ 7.  Defendant likewise informed the incoming duty nurse, Nurse Carolan, of the mistake and asked her to monitor Plaintiff's condition.  Id. ¶ 8.  Plaintiff was later sent to a local hospital, where emergency medical staff examined him, administered tests, and eventually discharged him.  Id. ¶¶ 9-11.  After being discharged from the hospital, Plaintiff was continually monitored until the effects of the medication subsided.  Boss Decl. ¶¶ 11-12.  Defendant's prompt recognition and reporting of her error, and the monitoring, care and treatment Plaintiff received as a result, completely undercut Plaintiff's conclusory and unsubstantiated claim that Defendant was deliberately indifferent to his serious medical needs.

Plaintiff's attempt to controvert certain aspects of Defendant's evidence is insufficient to raise a genuine dispute of material fact.  For instance, Plaintiff argues that "[i]t was five to ten minutes before defendant returned to inform [him that] she had given me another patient's medication, NOT seconds as stated."  Pl.'s Opp'n at 4.  However, Defendant did not claim that she responded in a matter of "seconds."  Johnson Decl. ¶ 5.  In any event, even if Defendant responded "five to ten minutes" after giving him the wrong medication, there is no evidence that such minimal delay was intentional or caused Plaintiff any harm.  See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (only delays that cause substantial harm violate the Eighth Amendment).  To the contrary, the record shows that Defendant responded promptly in acknowledging her error and in informing her colleagues to ensure that Plaintiff's condition was monitored.  Defendant's actions show care and concern for Plaintiff, not deliberate indifference.

Plaintiff also disputes the sequence of events leading to his taking the wrong medication. In her declaration, Defendant avers that the standard procedure for dispensing medication is to confirm the inmate's name; upon doing so, hand the medication to the inmate through the food slot on the cell door; ask the inmate to check the medication to ensure that they the same medication as he has been taking; and then provide the inmate with a cup of water to take the medication. Johnson Decl. ¶ 4. Though Defendant does not expressly state that she followed each of these steps, she does state that Plaintiff acknowledged checking the medications she had given to him—a fact that Plaintiff does not dispute. Id. ¶ 6. Plaintiff nonetheless claims that Defendant did not pass his medications through the food slot, but that she simply handed the medications to him directly, without asking him his name. Pl.'s Opp'n at 3. Since Defendant does not address Plaintiff's assertion that she did not ask him his name, the Court presumes for purposes of this motion that she failed to do so. That being said, the Court finds that Defendant's acts or omissions do not amount to deliberate indifference.

Federal courts have uniformly held that a bare assertion that a prison official failed to follow standard procedure is insufficient, as a matter of law, to demonstrate deliberate indifference. In Luckert v. Dodge County, 684 F.3d 808 (8th Cir. 2012), the estate of a detainee who committed suicide while in the county jail filed a § 1983 action against the county and jail officials for deliberate indifference to serious medical needs. The Eighth Circuit reversed the trial court's denial of defendants' motion for judgment as a matter of law after a jury found them liable for deliberate indifference. The court found inapposite the defendants' admission that they did not follow aspects of the County Department of Corrections' written suicide intervention policy. In that regard, the court noted that: "Failure to follow written procedures does not constitute per se deliberate indifference. If this were so, such a rule would create an incentive for jails to keep their policies vague, or not formalize policies at all." Id. at 819. The court found that, although the defendants did not follow the written policy and neglected to take other actions that "may constitute poor

judgment, negligence or possibly gross negligence, [such acts and omissions] do not constitute deliberate indifference when viewed in the context of the affirmative steps" they took to prevent the decedent's suicide.  Id. at 818.

Similarly, in Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), the estate of a pretrial detainee filed suit under § 1983 for deliberate indifference to serious medical needs after the decedent died while being transported to the jail.  Plaintiff alleged that the firemedics (firemen with medical training) who examined the decedent at the time of his arrest failed to render any treatment, even though they were informed by a bystander who knew the decedent that he had a history of seizures and that he, in fact, was about to have a seizure.  In addition, the firemedics failed to follow their own protocols, which included taking the vital signs of a seizing patient and calling paramedics.  On appeal, the court reversed the district court's denial of summary judgment for the firemedics.  Id. at 1258.  In reaching its decision, the court noted that there was no evidence "from which a jury could find that the firemedics actually drew the inference that [the decedent] was having a seizure," notwithstanding the information provided by the bystander.  Id.  In addition, the court ruled that the "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."  Id.

Under Farmer, a claim of deliberate indifference requires that the prison official (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm exists, (2) actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health.  511 U.S. at 837-38.  Here, it is arguable that Defendant was aware of facts *from which an inference could be drawn* that her failure to follow all of the steps for delivering medication to inmates created a substantial risk of serious harm to Plaintiff. While failing to confirm an inmate's name certainly could increase the risk of giving an inmate the wrong medication, in this instance, such risk was largely ameliorated by the fact that Plaintiff confirmed that he had been given the correct medication.  Johnson Decl. ¶ 6. In any event, even if Plaintiff could show that Defendant knew of facts from which such an inference could be drawn, nothing in the record demonstrates that Defendant *actually drew*

*that inference*. Farmer, 511 U.S. at 837. As in Luckert and Taylor, Defendant's deviation for the procedure governing the distribution of inmate medication may have been negligent—or even grossly negligent—but it is insufficient, as a matter of law, to show deliberate indifference, particularly in light of her subsequent corrective action. See Farmer, 511 U.S. at 835.

## IV. CONCLUSION

In sum, the Court finds that Defendant has shown that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. Accordingly,

IT IS HEREBY ORDERED THAT:

1. Defendant R.N. Johnson's Motion for Summary Judgment (Dkt. 25) is GRANTED.

2. The Clerk of the Court shall enter judgment in favor of Defendant Johnson, terminate all pending motions, and close the file.

3. For the reasons stated above, the Court certifies that any appeal from this decision would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).

4. This order terminates Docket 25.

IT IS SO ORDERED.

Dated: March 25, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA


ROY A. MELANSON,

   Plaintiff,

 v.

MARY JOHNSON et al,

   Defendant.
              /

Case Number: CV11-00446 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 26, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.



Roy A. Melanson 117654
Sterling Correcrtional Facility
Box 6000
Sterling, CO 80751

Dated: March 26, 2013
              Richard W. Wieking, Clerk
              By: Lisa Clark, Deputy Clerk

1
2
3
4 G:\PRO-SE\SBA\CR.11\11-446 - Melanson - Order Granting MSJ.docx
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28